UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FIDEL ANTONIO MONTOYA, an individual, a/k/a Fidel Montoya Gomez, d/b/a El Salvador Pupuseria Tita's, and the marital community of Fidel Antonio Montoya and Sonia Y. Gomez,<br><br>Defendants. | No. C19-665-RSM<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiff G & G Closed Circuit Events, LLC (G & G)'s Motion for Default Judgment against Defendant Fidel Antonio Montoya, doing business as El Salvador Pupuseria Tita's, and the marital community of Fidel Antonio Montoya. Dkt. #12. On August 8, 2019, the Court granted Plaintiff's Motion for Default against Fidel Antonio Montoya for failure to file an answer or otherwise plead in defense of this action. Dkt. #10. Plaintiff now requests statutory damages of $7,500, enhanced statutory damages of $30,000, and

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 1

$2,200 for trespass to chattel.  Having reviewed Plaintiff's Motion, the supporting documents, and the remainder of the record, the Court finds adequate bases for the entry of default judgment and an award of $7,500 in damages.

## II.     BACKGROUND

The Court accepts the following well-pleaded allegations of G & G's Complaint as established fact.  *See LHF Prods., Inc. v. Holmes*, 2018 WL 3742189, at *2 (W.D. Wash. Aug. 7, 2018) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).

This case involves the prohibited broadcast of *Saul Alvarez v. Julio Cesar Chavez, Jr. Championship Fight Program* ("the Program"), telecast nationwide on May 6, 2017.  G & G is an international, closed-circuit distributor of sports and entertainment programming that purchased the domestic commercial exhibition rights to broadcast the Program, which included the main event as well as undercard bouts and fight commentary.  Dkt. #1 ("Complaint") at ¶ 16.

Pursuant to the contract that granted G & G distribution rights to the Program, G & G sub-licensed the rights to commercial establishments, in exchange for a licensing fee, so that they may publicly exhibit the Program at their establishment.  *Id.* at ¶ 17.  To prevent unauthorized interception of the Program, G & G encrypted their programming by coding or scrambling the interstate satellite transmission of the Program.  Dkt. #14 at ¶ 9.  Once a commercial establishment paid to receive the Program, it received electronic decoding equipment and satellite coordinates to receive the signal, or its cable or satellite provider were notified to unscramble the reception of the Program for that establishment.

As part of its efforts to deter piracy, G & G retained investigators to identify any establishment that unlawfully accessed and aired the program.  Dkt. #14 at ¶ 6.  On May 6, 2017, investigator Kenneth Kemppainen observed the unlawful exhibition of the Program at El

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 2

Salvador Pupuseria Tita's at 26026 Pacific Highway South, Kent, WA. Dkt. #13 at 8. The investigator specifically reported seeing the main event between the fighters Saul "Canelo" Alvarez vs. Julio Cesar Chavez. Jr.. *Id*. He paid no cover charge to enter the establishment. *Id*. The commercial fee for an establishment the size of this establishment was $2,200.00. Dkt. #14 at ¶ 8. El Salvador Pupuseria Tita's did not pay this fee. *Id*. at ¶ 7. G & G claims it held exclusive distribution rights, and thus no other company could have granted authorization to broadcast the program. Because discovery never occurred in this case, Plaintiff could not determine whether Defendant pirated a satellite transmission or a cable transmission of the Program.

On May 3, 2019, G & G filed the instant case, alleging violations of 47 U.S.C. § 605, *et seq.*, 47 U.S.C. § 553, *et seq.*, and trespass of chattel. *See* Dkt. #1. G & G's proof of service states that a process server personally served Fidel Antonio Montoya at his home address on May 13, 2019. Dkt. #6.

### III.   DISCUSSION

**A. Legal Standard and Jurisdiction**

The Court has authority to enter a default judgment against Mr. Montoya based on the Clerk's entry of default, Dkt. #10, and pursuant to Federal Rule of Civil Procedure 55 and Local Civil Rule 55. The Court has subject matter jurisdiction over G & G's claims under the Federal Communications Act of 1934 pursuant to 47 U.S.C. § 605 and 28 U.S.C. §§ 1331. It also has personal jurisdiction over Mr. Montoya, a Washington resident. The Court has also been provided sufficient evidence to determine liability and the amount of damages claimed herein, as required by Fed. R. Civ. P. 55(b)(2). *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Once the Court determines Mr. Montoya's liability, it must decide whether to exercise its discretion to enter a default judgment. In deciding whether to enter a default judgment, a court

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 3

may consider seven factors set forth in *Eitel*: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Id.*

### B. Liability

The Court finds that G & G has sufficiently established Mr. Montoya's liability in this case.  Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish . . . such intercepted communication to any person."  47 U.S.C. § 605(a). The Ninth Circuit applies Section 605 to communications transmitted by satellite. *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) ("[I]t is clear from the case law since the 1984 amendments [to the Federal Communications Act of 1934] that the 'communications' protected by § 605(a) include satellite television signals.").

G & G initially brought this action under both 47 U.S.C. § 605 and 47 U.S.C. § 553 of the Federal Communications Act.  Section 605 generally applies to interception of satellite transmissions while Section 553 generally applies to interception of cable network transmissions. *See J & J Sports Prods., Inc. v. Frei*, No. C12-0127-BLW, 2013 WL 3190685, at *2 (D. Idaho June 21, 2013) ("To oversimplify, § 553 deals with theft of cable television communications, while § 605 deals with theft of satellite television communications.").  While the Ninth Circuit has not specifically addressed whether a plaintiff may recover under both sections for a single act of piracy, this Court has previously concluded that a plaintiff may only recover under one. *See, e.g., J & J Sports Prods., Inc. v. Lone Star Cafe & Pub*, No. C12-0764-RSL, 2013 WL 587662, at *1 (W.D. Wash. Feb. 14, 2013).  Section 553 sets a lower limit on statutory damages,

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 4

permitting a minimum recovery of $250 and maximum of $10,000, or up to $50,000 for willful violations. Section 605 permits a minimum recovery of $1,000 and maximum of $10,000, or up to $100,000 for willful violations. *Compare* 47 U.S.C. § 553(c)(3)(A)-(B) *with* 47 U.S.C. § 605(e)(3)(C)(i)-(ii).

Without knowing whether the violation occurred via satellite or cable, G & G has elected to abandon its claims under Section 553 and pursue damages under Section 605. Dkt. #12 at 6. To establish a Section 605 violation, a plaintiff must show that it has a proprietary interest in the Program and that the defendant unlawfully intercepted, received, published, divulged, displayed, and/or exhibited the Program without plaintiff's authorization. *See* 47 U.S.C. § 605(a). G & G has properly alleged the elements of a Section 605 violation: (1) G & G held exclusive nationwide commercial distribution rights to the Program, Dkt. #1 at ¶ 16; and (2) Mr. Montoya unlawfully intercepted, received, published, divulged, and/or exhibited the Program at the time of its transmission at his commercial establishment, *id.* at ¶¶ 9 and 19.

G & G acknowledges that without discovery, it cannot provide evidence regarding the format in which Mr. Montoya intercepted or received the Program, *i.e.* satellite versus cable transmission. Because G & G has abandoned its Section 553 claims and only requests default judgment and damages under Section 605 rather than both Sections 605 and 553, the Court will only consider default judgment and award damages under Section 605. G&G "requests an award of $7,500 in compensatory damages because the loss of Plaintiff's licensing fee fails to compensate Plaintiff adequately, and Plaintiff requests an award of $30,000 in enhanced damages to deter piracy generally and because of the seriousness of Defendant's conduct in relation to other instances where similar awards have been given." Dkt. #12 at 16.

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 5

G & G also seeks $2,200 in damages for trespass to chattel, as well as reasonable attorney's fees and costs.

**C. Eitel Factors**

The majority of the *Eitel* factors weigh in favor of entry of default judgment.

1. Prejudice to plaintiff

G & G would be prejudiced without entry of judgment because it would be left without legal remedy. *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) ("[P]rejudice exists where the plaintiff has no recourse for recovery other than default judgment.") (internal citations and quotations omitted). Here, G & G has no other means to recover the licensing fee that it would have been owed under the terms of the sublicense agreement. This factor therefore favors entry of default judgment.

2. Substantive merits

As explained above, the Court finds that G & G has established Mr. Montoya's liability. The only remaining issue is the proper amount of damages.

3. Sufficiency of the complaint

As explained above, G & G's Complaint sets forth sufficient specific facts that establish a prima facie case of piracy under 47 U.S.C. § 605.

4. Sum of money at stake

The sum of money at stake likewise favors default judgment. G & G seeks damages in the total amount of $39,700 plus fees and costs. This amount is, in the opinion of the Court and given the circumstances of this case, approaching "excessive" compared to amounts requested in other cases brought under Section 605. *See, e.g.*, *Joe Hand Promotions, Inc. v. Streshly*, 655 F. Supp. 2d 1136, 1136 (S.D. Cal. 2009) (finding proposed award of $100,875 for signal piracy

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 6

"manifestly excessive under existing law"). This factor further favors entry of default of judgment if the court awards less than the amount requested. *J & J Sports Prods., Inc. v. Silva*, No. C17-0681-MO, 2017 WL 5632659, at *4 (D. Or. Nov. 20, 2017)). For the reasons set forth below, the Court denies the total amount of damages requested by G & G. Accordingly, the fourth *Eitel* factor also favors default judgment.

5. Possibility of a dispute concerning material facts

Next, the Court must consider the possibility of dispute as to any material facts. Here, G & G has alleged facts that, if taken as true, are sufficient to establish a Section 605 violation. Mr. Montoya has failed to appear in this case and has failed to present any evidence or argument to the contrary. Because allegations of a well-pleaded complaint are taken as true after entry of default judgment, there is no likelihood that any genuine issue of material fact exists. *J & J Sports Prods., Inc. v. Machuca*, No. C16-715-TLN-KJN, 2016 WL 5939750, at *5 (E.D. Cal. Oct. 13, 2016); *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005). Accordingly, this factor also favors default judgment.

6. Probability that default was due to excusable neglect

Finally, the Court finds low probability that Mr. Montoya's default was due to excusable neglect, given Defendant's many opportunities to respond to filings in this matter and the length of time between the motion for default and this Order. Plaintiff has also provided a sworn affidavit to show that it properly served Mr. Montoya and Defendant has since failed to appear. When a defendant is properly served and fails to respond, courts find that default was not due to excusable neglect. *Virgin Records Am., Inc. v. Cantos*, No. CIV. 06CV915-L(CAB), 2008 WL 2326306, at *3 (S.D. Cal. June 3, 2008).

7. Policy favoring decisions on the merits

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 7

This factor typically weighs against default judgment because cases "should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the Court finds that in instances where a defendant's failure to appear makes a decision on the merits "impractical, if not impossible," any preference for deciding cases on the merits "does not preclude a court from granting default judgment." *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

In sum, the majority of the *Eitel* factors favor default judgment. Accordingly, the Court GRANTS default judgment against Mr. Montoya on G & G's Section 605 claim.

**D. Damages**

Having concluded that G & G is entitled to entry of default judgment against Mr. Montoya, the Court will now address the question of relief. G & G requests $7,500 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II), based on the loss of the $2,200 sublicensing fee. G & G also requests an award of enhanced damages in the sum of $30,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Even though Mr. Montoya failed to object to the amount of damages requested, the Court maintains discretion in the amount of damages it awards to G & G. *Machuca*, 2016 WL 5939750, at *5; *J & J Sports Prods., Inc. v. Jurado*, 2011 WL 6153605, at *3 (E.D. Cal. Dec. 12, 2011). Here, based on Mr. Montoya's alleged conduct, the Court concludes that damages should be awarded, but at a reduced sum.

Plaintiffs alleging Section 605 claims may choose to seek either actual or statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II). For each violation, the statute provides for statutory damages of not less than $1,000 and not more than $10,000, as the court considers just. *Id.* The statute also authorizes additional statutory damages of not more than $100,000 if the court finds the violation was "committed willfully and for the purposes of direct or indirect

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 8

commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). However, when determining the amount of damages awarded for signal piracy, courts must be careful to not overcompensate distributors and must ensure that the statutory award remains proportional to the violation. *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000); *see also Kingvision Pay–Per–View v. Lake Alice Bar,* 168 F.3d 347, 350 (9th Cir. 2009) (Encouraging entry of "a sanction that deters but does not destroy.").

The Court finds G & G's request for statutory damages in the amount of the $7,500 just and appropriate, and therefore awards G & G statutory damages under 47 U.S.C. § 605(e)(3)(i)(II) in that amount. The Court also concludes that Mr. Montoya committed the violation willfully and for the purposes of direct or indirect commercial advantage. *See* Dkt. #15 at ¶¶ 9-11 (describing willful and intentional acts necessary to unlawfully intercept and broadcast G & G's programming). The $7,500 amount, greater than the licensing fee, is therefore appropriate. However, for the reasons set forth below, the Court declines to award the requested $30,000 in enhanced damages.

In determining willfulness of Section 605 violations, courts generally consider factors such as "repeat violations, substantial unlawful monetary gains, significant actual damages to plaintiff, advertising, cover charges, or charging premium menu and drink prices." *Silva*, 2017 WL 5632659, at *5 (quoting *J & J Sports Prods. Inc. v. Miramontes*, No. C10-2345-PHX-FJM, 2011 WL 892350, at *2 (D. Ariz. Mar. 14, 2011)). G & G offers no evidence that Mr. Montoya has had repeat violations or significant evidence to support the other aggravating factors.

In similar cases, where defendants have repeated violations but no other aggravating factors, courts have declined to award $10,000. *See, e.g.*, *Joe Hand Promotions, Inc. v. Hetemi*, No. 1:16-CV-00473-CWD, 2017 WL 2457150, at *7 (D. Idaho June 6, 2017) (Awarding $5,000

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 9

in additional damages for repeated violations by small establishment but no other aggravating factors); *Machuca*, 2016 WL 5939750, at *6 (Awarding $5,000 in enhanced damages for two prior violations). Accordingly, the Court finds enhanced damages unwarranted in this case. G & G is therefore entitled to $7,500 in total statutory damages based on its claim under 47 U.S.C. § 605.

The Court finds that damages for trespass to chattel are duplicative of the above award and declines to add to the $7,500 figure.

### IV.   CONCLUSION

The Court, having reviewed the relevant briefing and the remainder of the record, finds adequate bases for default judgment. Accordingly, the Court hereby finds and ORDERS:

1) Plaintiff G & G's Motion for Default Judgment, Dkt. #12, is GRANTED. Plaintiff is awarded statutory damages in the amount of $7,500.

2) No later than 21 days from the date of this Order, G & G may file a supplemental motion for attorney's fees, limited to six (6) pages, and supported by documentary evidence reflecting the amount of fees G & G seeks.

3) This award amount shall accrue interest pursuant to 28 U.S.C. § 1961.

DATED this 13th day of July, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE